# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No.  **CR 03-75-PHX-EHC** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | October 22, 2004 |
| ANDREW ACOSTA, | ) | 11:36 a.m. |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE:  THE HONORABLE EARL H. CARROLL, JUDGE

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

### MOTION TO WITHDRAW

APPEARANCES:

For the Defendant:
            Law Office of Mark A. Paige
            By:  **Mark A. Paige**, Esq.
            45 West Jefferson, Suite 806
            Phoenix, Arizona 85003

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription


COPY

00001

2

1          THE CLERK:  Criminal 2003-75, United States of

2    America versus Andrew Acosta, on for ex parte motion to

3    withdraw as counsel, to be withdrawn.

4          THE COURT:  All right.  And you seek leave to

5    withdraw; right, Mr. Paige?                              11:36:55

6          MR. PAIGE:  Yes.  There's -- Mr. Acosta's matter that

7    he raised before that I think needs to be in a sealed

8    proceeding if we're going to discuss those.

9          And then in my response the Court requested that I

10   also move to withdraw; correct.                          11:37:11

11         THE COURT:  Well, you seek to have another attorney

12   now, do you, Mr. Acosta?

13         THE DEFENDANT:  Another attorney?

14         THE COURT:  Another lawyer.  You want another lawyer?

15         THE DEFENDANT:  Oh, yes.                            11:37:42

16         THE COURT:  And why is that?

17         THE DEFENDANT:  Because of the motion that I filed,

18   the reasons that I put in the motion, as far as I didn't feel

19   that -- I filed a motion with the Court, I wasn't supposed to,

20   it was denied because I had a lawyer.  I asked Mr. Paige to   11:37:56

21   look at it, and he told me he would, and he never did.  And

22   then he came and told me he did -- about the sixth month that

23   I was with him I asked him -- started asking questions about

24   my file.  He told me that he hasn't had a chance to read my

25   file.  We're talking about six months later.             11:38:17

00002

UNITED STATES DISTRICT COURT

3

1      THE COURT:  Well, your file, of course, is probably

2  now -- the docket is a foot and a half or so tall, or six,

3  eight inches, Mr. Acosta, given all of the attention that

4  you've had in this Court, the attention that you had when --

5      MR. PAIGE:  Miss Budge --                          11:38:38

6      THE COURT:  -- Daphne Budge, Miss Budge was

7  representing you, all of the exercise that she went through

8  affording you counsel at trial, employing a photographer to

9  come down and spend countless times with you getting pictures,

10 all of those kind of matters.  And she withdrew.  And you     11:38:55

11 wanted another lawyer then; right?

12     THE DEFENDANT:  Yes.

13     THE COURT:  And you have Mr. Paige.  And Mr. Paige is

14 on our Criminal Justice Act panel, and he's a competent

15 lawyer.                                                  11:39:15

16     I'm persuaded also, Mr. Acosta, that no lawyer's

17 going to suit you, because no lawyer is going to tell you what

18 you want to hear.  And the record is the record in this case.

19 The matter went to trial.  It can be appealed.  And the Ninth

20 Circuit will determine whether or not there was a proper      11:39:39

21 trial.

22     And the same is true with respect to Mr. Paige.

23 Mr. Paige will file a claim at some time for his attorney's

24 fees when he -- the services that he did provide to you.

25     You're not in the Spanish speaking group down there   11:40:00

UNITED STATES DISTRICT COURT

00003

4

```
 1    in Florence, I take it?

 2             THE DEFENDANT:  No.

 3             THE COURT:  Okay.  And more and more I think the

 4    people that are confined at that -- in Florence, they're

 5    getting a lot of advice from other inmates about cases,     11:40:14

 6    Blakely, for instance, and some of these cases that have been

 7    getting attention.

 8             And I don't find any support for your claims about

 9    Mr. Paige not being available to represent you, discussing

10    matters with you, and whatever expectations you might have had  11:40:35

11    as to what he was to provide you.  That's it.  I'm going to

12    leave Mr. Paige representing you, because another lawyer would

13    simply come in, as Mr. Paige has, familiarize himself with the

14    case, give you advice that isn't what you're going to want to

15    hear.  And the case might as well be resolved, go to the Ninth  11:40:59

16    Circuit, find out whether or not you had a fair trial.

17             That's, as I view it, where we are, Mr. Acosta.

18             THE DEFENDANT:  Can I say something?

19             THE COURT:  All right?

20             THE DEFENDANT:  Can I say something?

21             THE COURT:  Yes.                                      11:41:15

22             THE DEFENDANT:  You mentioned that someone else would

23    come in --

24             THE COURT:  Pardon me.  Move over where the

25    mike -- give him a microphone there.  Just talk into the      11:41:23
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  **CR 03-75-PHX-EHC** |
| Plaintiff, | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | March 11, 2005 |
| ANDREW ACOSTA, | ) | 2:30 p.m. |
| Defendant. | ) | |

BEFORE:  THE HONORABLE EARL H. CARROLL, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SENTENCING

**APPEARANCES:**

For the Plaintiff:
>       U.S. Attorney's Office
>       By:  **Charles Hyder**, Esq.
>       40 North Central Avenue, Suite 1200
>       Phoenix, Arizona 85004

For the Defendant:
>       Law Office of Philip A. Seplow
>       By:  **Philip A. Seplow**, Esq.
>       2000 North 7th Street
>       Phoenix, Arizona 85006

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription



00005

2

1          THE CLERK:  Criminal 2003-75, United States of

2    America versus Andrew Acosta, on for sentencing.

3          MR. HYDER:  Good afternoon, Your Honor, Charles Hyder

4    on behalf of the United States.

5          MR. SEPLOW:  Good afternoon, Your Honor,          14:30:46

6    Philip Seplow present with Mr. Andrew Acosta.

7          THE COURT:  All right.  We're going to be together

8    for a little while perhaps, and so you may stay seated there

9    at the table, Mr. Seplow --

10         MR. SEPLOW:  Thank you.                           14:30:58

11         THE COURT:  -- with your client, and Mr. Hyder as

12   well.

13         We're here today for sentencing for Mr. Acosta.

14         And let me ask you, Mr. Acosta, now, are you getting

15   any medical treatment where you are?                    14:31:15

16         THE DEFENDANT:  Medical treatment?

17         THE COURT:  Medical treatment.

18         THE DEFENDANT:  Yes.

19         THE COURT:  For what purpose?

20         THE DEFENDANT:  Just the regular checkups and stuff,  14:31:24

21   that's what I thought you meant.

22         THE COURT:  Do you have a health problem?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Are you taking any medications?

25         THE DEFENDANT:  No, sir.                          14:31:34

UNITED STATES DISTRICT COURT

00006

3

1          THE COURT:  Are you able to read, write and

2   understand English?

3          THE DEFENDANT:  Yes.

4          THE COURT:  How far did you go in school?

5          THE DEFENDANT:  Seventh grade.                    14:31:41

6          THE COURT:  And had you had some education programs

7   after the seventh grade?

8          THE DEFENDANT:  Yes.  I received a G.E.D.

9          THE COURT:  And do you speak any other language?

10         THE DEFENDANT:  Spanish.                           14:31:57

11         THE COURT:  Do you consider yourself fluent in

12   Spanish?

13         THE DEFENDANT:  No.

14         THE COURT:  Do you consider English to be your best

15   language?                                                14:32:05

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  The probation office has

18   prepared a presentence report.  Have you read the presentence

19   report?

20         THE DEFENDANT:  Yes.                               14:32:12

21         THE COURT:  And there were objections filed, and the

22   probation office responded.  Were there objections filed?

23   Yes, I believe there were.  Pink sheets.

24         And did you read the objections and the responses?

25         THE DEFENDANT:  Yes.                               14:32:28

00007

UNITED STATES DISTRICT COURT

4

1          THE COURT:  Is there anything you would like to say

2     yourself, object to or comment on that's included in the

3     presence report or the objection and responses?

4          THE DEFENDANT:  If this is the time I take to talk, I

5     guess, yeah.                                        14:32:46

6          THE COURT:  What?

7          THE DEFENDANT:  Yes, I would like to say something on

8     my behalf before sentencing.

9          THE COURT:  Well, if you don't have any specific

10     objections to the presence report, then is there something    14:32:53

11     you'd like to tell me about yourself or your circumstances

12     that you'd want me to consider in deciding what I should do?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  This is the time for you to do

15     that, if you choose to.                              14:33:06

16          THE DEFENDANT:  I guess the most important thing is,

17     the presence report kind of made me seem very dangerous,

18     and which I can understand, you know -- I can't hide anything

19     I've done, you know.

20          Just, what it doesn't tell you is a lot of other        14:33:27

21     stuff of what I am, you know, a loving father, I'm an artist,

22     I'm a writer.  It doesn't tell you that stuff.

23          And I just -- it's taken me -- it's taken me this

24     last year in segregation to trust God more, to do a lot of

25     other things to see what happened.                   14:33:55

00008

UNITED STATES DISTRICT COURT

5

1      I never knew what my father's trial was about.

2  Twenty years ago I watched him get sentenced, I never knew why

3  until this came out.  I didn't even know.  I didn't even know.

4  There's a lot of stuff that I don't remember that happened in

5  my life, you know.  And like I said, it's taken me facing this          14:34:12

6  much time, this amount of time for me to see everything.  I

7  never even bothered to look before.

8      I know I can -- I can make it out there, I can

9  function, I'm smart enough.  You know, I don't think 20 years

10  of my life, 17, 15 years is -- you know, I don't want my kids          14:34:33

11  to go through the same thing I did.  I read somewhere where

12  the cycle has to stop somewhere.

13      I know this is a bad time to ask for it, but I

14  just -- I know I'm not that bad, and the reason I know is

15  because every time I've ever done something, I've been scared          14:34:52

16  to death, I've been scared.  And I've always thought, you

17  know, make sure, don't hurt this person, don't hurt -- I don't

18  know how much that matters, but to me it does.  I've never

19  intentionally wanted to hurt anybody.  At those times -- at

20  that time I thought that was the thing to do, that was my only          14:35:11

21  option.  Sometimes I was either on drugs, and just other times

22  it was -- I really, really thought that that was the only

23  thing to do, you know.

24      Like I said, I've been quartered in that room by

25  myself, I spent 15 months in the hole by myself.                       14:35:31

00009

6

1          THE COURT:  And this is down at CCA?

2          THE DEFENDANT:  Yeah, for stuff that happened that

3    Mr. Hyder put in his report, which they investigated and they

4    found out that other stuff -- I was let back into general

5    population after the 15 months, because of their                    14:35:47

6    investigation.

7          But during that 15 months is when I was cornered, you

8    know.  And I had to look at this stuff, I had no choice.  You

9    know, I blame myself for everything that happened.  My little

10   brother, he died on the streets.  I have to give all that up.       14:36:02

11   I have to move on, you know.

12         I just -- I know this is a real bad time to ask for

13   it, you know, especially, but what I'm asking the Court for is

14   not to look at me as a career criminal, you know.  I feel as

15   if I'm being sentenced like -- like I've killed somebody or        14:36:19

16   murdered somebody, if I've done something.  And I'm not saying

17   that the things I've done doesn't -- aren't bad, you know.

18   I'm just saying that inside, I am, I'm a good person, I'm a

19   good man.

20         I've believed all these reports all my life that I'm         14:36:38

21   not going to amount to nothing.  I used to read them and

22   believe them.  I don't believe that anymore, I can make it.  I

23   know I can make it.  Even if it's by myself, because that's

24   all there is right now.  I can --

25         THE COURT:  What are the ages of your children?             14:36:54

00010

7

1      THE DEFENDANT:  My daughter's 14, the oldest, and the

2  youngest is seven.

3      THE COURT:  And they're living with their mother?

4      THE DEFENDANT:  Yes, right now.

5      THE COURT:  And going to school?                    14:37:06

6      THE DEFENDANT:  Yes.

7      THE COURT:  Here in Phoenix?

8      THE DEFENDANT:  They go to school right here on the

9  Reservation at St. Peters.

10     THE COURT:  Is their mother a Native American?        14:37:18

11     THE DEFENDANT:  Yes.

12     THE COURT:  Of what tribe?

13     THE DEFENDANT:  Gila River, she's Pima.

14     THE COURT:  All right.  Mr. Seplow?

15     MR. SEPLOW:  Yes, Your Honor.                        14:37:41

16     Your Honor, in this particular case we are asking the

17  Court to look at the sentencing guidelines, to weigh them in,

18  but at the end not to give the ultimate conclusion or the

19  ultimate, I guess, ciphering that the guideline gives you as a

20  career offender.                                        14:38:19

21     The other day while we were trying to find recent

22  cases on Booker and Shepard, we came up with U.S. versus

23  Carvajal.  I don't know if the Court has seen it, it's a

24  February 22nd, 2005 decision out of the Southern District of

25  New York.  It's 2005 WL 476125.                         14:38:33

00011

UNITED STATES DISTRICT COURT

8

1         THE COURT:  Pardon me.   Is it published in some book?

2         MR. SEPLOW:  Well, we got it off the internet just on

3   the Ninth --

4         THE COURT:  So it doesn't have a F.2d or F.3d or

5   whatever?                                                    14:38:52

6         MR. SEPLOW:  No, just 2005 WL --

7         THE COURT:  Well, that's Westlaw.  Tell me what it

8   is.

9         MR. SEPLOW:  Could I read the three paragraphs to the

10  Court?                                                       14:39:00

11        THE COURT:  Sure.

12        MR. SEPLOW:  Thank you.

13        THE COURT:  But tell me also, because maybe I'd like

14  to read them when I'm reflecting to myself.  Why don't you

15  give me the Westlaw cite as well.                            14:39:08

16        MR. SEPLOW:  Okay.   2005 Westlaw.

17        THE COURT:  WL.

18        MR. SEPLOW:  476.

19        THE COURT:  476.

20        MR. SEPLOW:  125.                                      14:39:17

21        THE COURT:  125.

22        MR. SEPLOW:  The blurb that I have here is what I'm

23  going to read to the Court --

24        THE COURT:  It must be more important than a blurb.

25        MR. SEPLOW:  Well, when --                             14:39:27

00012

9

1          THE COURT:  Are you reading headnotes or what?

2          MR. SEPLOW:  Well, it's somebody's summary of the

3     case.

4          THE COURT:  Read me what you want to.

5          MR. SEPLOW:  Thank you.                                    14:39:35

6             Judge Alvin K. Hellerstein explains, when

7        imposing a 14-year sentence, his rationale for

8        departures from the strictures of Career

9        Offender Punishments that I considered not

10       entirely applicable to Carvajal's offenses              14:39:49

11       and criminal history.  Judge Hellerstein

12       carefully explains that career offender

13       enhancements would raise the defendant's

14       sentence from a range of 63 to 78 months

15       to a range of 262 to 327 months.                        14:40:03

16       And if I could just stop for a minute.  We're pretty

17    close in that range here.

18          THE COURT:  Don't even get close to it, I don't

19    think.

20          MR. SEPLOW:  Well, what we have here, Your Honor --    14:40:14

21          THE COURT:  I forget what it turned out.  But it's

22    not that --

23          MR. SEPLOW:  Right.  What he has, Your Honor, at

24    least according to the probation department --

25          THE COURT:  Well, I made a note someplace.           14:40:25

00013

UNITED STATES DISTRICT COURT

1      MR. SEPLOW:  He has 70 to 87 --

2      THE COURT:  Pardon me.  He does, he has -- if he's a

3   VI and a 32, he has a range of 210 to 240 months.

4      MR. SEPLOW:  Right.  And if he's just a IV -- a Roman

5   Numeral IV and a 23, he's only at 70 to 87.  So this is very    14:40:42

6   similar to what Judge Hellerstein was dealing with.  That's

7   all I was getting at.

8      THE COURT:  I apologize for being wrong.

9      MR. SEPLOW:  Okay.

10      He then decides that neither range is appropriate in    14:40:52

11   light of 3553(a) and Booker's instructions.

12          In my opinion, a 168 month term of

13          custodial punishment of 168 months would be

14          just punishment.  Judge Carvajal -- Joseph

15          Carvajal is 34 years old, and will be 48    14:41:12

16          years when he emerges from prison, or 15

17          percent less if he wins reductions for good

18          behavior.

19      Here is the important part, I think.

20          Rehabilitation is also a goal of    14:41:24

21      punishment.  That goal cannot be served if

22      the defendant can look forward to nothing

23      beyond imprisonment.  Hope is the necessary

24      condition of mankind, for we all are created

25      in the image of God.  A judge should be    14:41:35

11

1        hesitant before sentencing so severely that

2        he destroys all hope and takes away all

3        possibility of useful life.   Punishment

4        should not be more severe than that necessary

5        to satisfy the goals of punishment.                    14:41:49

6        And that's all I have here.

7        But in Mr. Andrew Acosta's situation -- and I rely on

8    Mark Paige's defendant's motion and memorandum regarding

9    sentencing.   I know that Mr. Acosta was not happy initially

10   with what Mr. Paige did, but I've gone through Mr. Paige's      14:42:04

11   memorandum several times, and I don't think I can improve upon

12   it.

13       He points out several things.   One that really

14   doesn't go to this issue, but it's in front of the Court so I

15   should address it, is Mr. Acosta's first attorney gave him      14:42:20

16   information about what a plea would mean, which was pretty

17   wrong, had about a nine year difference.

18       So when he takes that information about what a plea

19   is going to be, that leads him to go to trial.   And now he's

20   looking at being a career offender of 210 to 240 months.   It   14:42:40

21   would have been more than 240 if it wasn't statutorily cut off

22   at 20 years, I believe.

23       Then there's a whole section of his childhood and

24   domestic abuse.   And I think this would give the Court the

25   opportunity to see that here is a guy living on the streets     14:42:55

UNITED STATES DISTRICT COURT

12

1   since he was 13.   Several years after that he, I guess, takes

2   on the responsibility of a significant other, and then a

3   child.   And that gets him into his situation where he sells

4   the rock cocaine, I think it was 15 rocks, I'm not exactly

5   sure how many it was, but I think it was something like that.          14:43:16

6          So here's a guy who really hasn't had the chance to

7   mature, hasn't had that maturation period, been doing drugs,

8   which basically harnesses his ability for his intellectual

9   capacities to go at the same level as someone like us who

10   don't -- who aren't on the drugs at 13.          14:43:33

11          And that would give the Court some basis to say,

12   well, I've considered the sentencing guidelines, but here is

13   something very, very extreme, which leads the Court to believe

14   that Mr. Acosta is not a career offender, at least should not

15   have the strictures of the 210 to 240 month range.          14:43:49

16          Now, what happens is, when you start talking about

17   his criminal history is overstated, if you go through his

18   criminal history you'll see he has several arrests.   There is

19   one assault, it's dismissed.   There's really nothing that is

20   really actionable, except for the rock and the extortion,          14:44:10

21   which apparently comes out of the bank robbery.

22          I will be candid with the Court, I tried to see if I

23   could fit those into a Shepard hole and I just couldn't do it.

24   If the Court can that would be great, but I couldn't figure it

25   out in that regard.          14:44:27

00016

UNITED STATES DISTRICT COURT

34

1    Mr. Hyder.

2           Mr. Acosta has been in custody, pretrial custody as

3    long as others.

4           I will ask the Government to file with the Court

5    under seal any report from the prison, CCA, concerning          15:21:19

6    Mr. Acosta and his conduct there, as well as any

7    communications that were given to CCA by the Government when

8    Mr. Acosta was placed in CCA that impact on his going into

9    segregation.  And so I'll be interested in seeing that.

10          With respect to Mr. Acosta, at some time these people    15:21:50

11   come before me over an extended period of time, you get a

12   sense of looking at them, and perhaps coming to different

13   judgments about them.  And certainly the discretion that I

14   have to do things is limited and restricted.  I have to give

15   reasons for what I do under sentencing procedures now, whereas  15:22:13

16   before 1984 you could simply sentence someone to the maximum

17   term allowed by the statute.  You can't do that now, you can't

18   do that after Ameline.

19          Whatever sentence I impose is reviewable on appeal by

20   the Ninth Circuit as to whether or not I have appropriately     15:22:41

21   done whatever I do, upward or downward.

22          Over the period of time that I've been here, I have

23   sentenced people to extended sentences, up to as much as 30

24   years or more in prison.  Some of them I would believe now

25   were appropriate for the crime that they committed at that      15:23:16

00017

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

---

UNITED STATES OF AMERICA,      )
                               )   No.   CR 03-75-PHX-EHC
            Plaintiff,         )
                               )
      vs.                      )       Phoenix, Arizona
                               )       April 12, 2005
ANDREW ACOSTA,                 )        10:29 a.m.
                               )
            Defendant.         )
_____)

BEFORE:  THE HONORABLE EARL H. CARROLL, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SENTENCING

**APPEARANCES:**
For the Plaintiff:
            U.S. Attorney's Office
            By:  **Charles Hyder**, Esq.
            40 North Central Avenue, Suite 1200
            Phoenix, Arizona 85004

For the Defendant:
            Law Office of Philip A. Seplow
            By:  **Philip A. Seplow**, Esq.
            2000 North 7th Street
            Phoenix, Arizona 85006

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

COPY                                            00018

6

1        Mr. Acosta has his criminal history.  He qualifies as

2    a career offender for purposes of determining his sentence.

3    That gives him a bump from a criminal history IV to a criminal

4    history VI.  A VI and a 32 equals 210 to 262 months.  And

5    there's a maximum by statute of 240 months, which is 20 years.    10:37:00

6        And so it's caused me to go back and look at the

7    career offender sections, and also disclosure of presentence

8    reports, and think about at least possible departures.  And in

9    Mr. Acosta's case, those are limited, if any.

10        So, one of the other matters that has come to my    10:37:36

11    attention only very recently, and it has to do with sentencing

12    issues and payment of restitution.  And I'm advised that the

13    Ninth Circuit, on March 31st, 2005, issued an opinion, U.S.

14    versus Gunning, G-U-N-N-I-N-G, Ninth Circuit 04-30104, in

15    which they say -- and I call my staff's attention to it as    10:38:15

16    well, that a District Court is required to set forth a

17    schedule of payments for -- while a person is in custody,

18    rather than leaving it to the Bureau of Prisons or someone

19    else to make some decision.

20        And so that's something that's called to my    10:38:41

21    attention.  And we haven't discussed it, but it's something we

22    can discuss this morning.

23        And you didn't file any response, Mr. Seplow, to the

24    Government -- to the probation office response?

25        MR. SEPLOW:  No, Your Honor.    10:39:07

UNITED STATES DISTRICT COURT

00019

Westlaw.

185 Fed.Appx. 590                                                                                     Page 1

185 Fed.Appx. 590, 2006 WL 1722545 (C.A.9 (Ariz.))
(Cite as: 185 Fed.Appx. 590)

C
U.S. v. Acosta
C.A.9 (Ariz.),2006.
This case was not selected for publication in the Federal Reporter.Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)
United States Court of Appeals,Ninth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andrew ACOSTA, Defendant-Appellant.
No. 05-10271.

Submitted June 12, 2006.[FN*]

> FN* This panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).
> Filed June 14, 2006.

**Background:** Defendant was convicted in the United States District Court for the District of Arizona, Earl H. Carroll, J., of bank robbery, and was sentenced as a career offender. Defendant appealed.

**Holdings:** The Court of Appeals held that:

(1) prior conviction for extortion was a qualifying crime of violence for purposes of career offender provisions of sentencing guidelines;

(2) defendant was bound by counsel's admission that he met the age requirement for career offender status; and

(3) defendant did not have a due process right to be present at hearing on evidentiary motion.

Affirmed.
West Headnotes
[1] Sentencing and Punishment 350H ⟜1263

350H Sentencing and Punishment
   350HVI Habitual and Career Offenders
      350HVI(C) Offenses Usable for Enhancement
         350HVI(C)I In General
            350Hk1261 Violent or Nonviolent Character of Offense
            350Hk1263 k. Particular Offenses. Most Cited Cases
Prior conviction for extortion was a qualifying crime of violence for purposes of career offender provisions of the sentencing guidelines. 18 U.S.C.A. § 2113(a); U.S.S.G. § 4B1.1, 18 U.S.C.A.

[2] Sentencing and Punishment 350H ⟜1379(4)

350H Sentencing and Punishment
   350HVI Habitual and Career Offenders
      350HVI(K) Proceedings
         350Hk1375 Evidence
            350Hk1379 Admissibility
            350Hk1379(4) k. Declarations, Admissions, and Confessions. Most Cited Cases
Defendant was bound by counsel's admission during sentencing that he met the age requirement for career offender status. U.S.S.G. § 4B1.1, 18 U.S.C.A.

[3] Constitutional Law 92 ⟜4614

92 Constitutional Law
   92XXVII Due Process
      92XXVII(H) Criminal Law
         92XXVII(H)4 Proceedings and Trial
            92k4613 Presence and Appearance of Defendant and Counsel
            92k4614 k. In General. Most Cited Cases
      (Formerly 92k268(6))

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

185 Fed.Appx. 590

Page 2

185 Fed.Appx. 590, 2006 WL 1722545 (C.A.9 (Ariz.))
**(Cite as: 185 Fed.Appx. 590)**

**Criminal Law 110 ☞636(3)**

110 Criminal Law
    110XX Trial
      110XX(B) Course and Conduct of Trial in General
        110k636 Presence of Accused
          110k636(3) k. During Preliminary Proceedings and on Hearing of Motions. Most Cited Cases
Hearing on evidentiary motion related to scope of expert witness's testimony was not a critical stage of criminal prosecution, so as to give rise to a due process right for defendant to be present. U.S.C.A. Const.Amend. 5; Fed.Rules Cr.Proc.Rule 43(b)(3), 18 U.S.C.A.

**\*590** Charles F. Hyder, Esq., Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff-Appellee.
Philip A. Seplow, Esq., Law Offices of Philip A. Seplow, Phoenix, AZ, for Defendant-Appellant.

Appeal from the United States District Court for the District of Arizona, Earl H. Carroll, District Judge, Presiding. D.C. No. CR-03-00075-EHC.

Before: SCHROEDER, Chief Judge, GRABER, Circuit Judge, and DUFFY, FN**District Judge.

    FN** The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

MEMORANDUM

    FN*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

**\*\*1** A jury convicted Defendant Andrew Acosta of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2. The district **\*591** court sentenced him as a " career offender" under U.S.S.G. § 4B1.1. We affirm.

[1] 1. The district court ruled that Defendant's prior conviction for extortion under 18 U.S.C. § 2113(a) was a qualifying crime of violence for purposes of U.S.S.G. § 4B1.1.FN1 *United States v. Selfa,* 918 F.2d 749, 751 (9th Cir.1990), holds that a conviction under § 2113(a) is a "crime of violence" for purposes of the career offender provisions of the Guidelines. The plea agreement entered into by Defendant in relation to that conviction demonstrates that *Selfa's* holding is applicable.

    FN1. Where, as here, a defendant fails to object at trial, we review a district court's application of the Sentencing Guidelines for plain error and its factual findings for clear error. *United States v. Brown,* 417 F.3d 1077, 1079 n. 3 (9th Cir.2005) (per curiam); *United States v. Cantrell,* 433 F.3d 1269, 1279 (9th Cir.2006).

[2] 2. In sentencing Defendant as a career criminal under section 4B1.1, the district court also found that Defendant was 18 years or older at the time he was convicted of the instant offense. Defense counsel admitted during sentencing that Defendant met the age requirement. *See United States v. Hernandez-Hernandez,* 387 F.3d 799, 806 (9th Cir.2004) ("[C]riminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority."), *vacated on other grounds by Ramos-Birrueta v. United States,* 543 U.S. 1183, 125 S.Ct. 1427, 161 L.Ed.2d 185 (2005)

[3] 3. Defendant argues that, in his absence, the district court heard through counsel, and ruled on, an evidentiary motion related to the scope of his expert witness' testimony in violation of his due process right to be present during all critical stages of his prosecution.FN2 Defendant failed to prove that he was, in fact, absent during the time span in question. Even assuming Defendant's absence, the motion hearing does not qualify as a "critical stage" to which a defendant's due process right to presence applies. *See* Fed. R. Crim. P. 43(b)(3) (identifying " Conference or Hearing on a Legal Question" as a stage of trial that does not require a defendant's presence). Even assuming error, Defendant shows

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

185 Fed.Appx. 590

185 Fed.Appx. 590, 2006 WL 1722545 (C.A.9 (Ariz.))
**(Cite as: 185 Fed.Appx. 590)**

no prejudice.

> FN2. Because Defendant failed to raise this claim at trial, we review for plain error. *United States v. Romero,* 282 F.3d 683, 689 (9th Cir.2002).

AFFIRMED.

C.A.9 (Ariz.),2006.
U.S. v. Acosta
185 Fed.Appx. 590, 2006 WL 1722545 (C.A.9 (Ariz.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

00022

FE 3

RICHARD M. ROMLEY
Maricopa County Attorney

Lawrence Turoff
BAR ID #: 001431
Deputy County Attorney
301 West Jefferson  Suite 800
Phoenix, AZ   85003
Telephone:  602 506-7719
Attorney for Plaintiff

QUADRANT UA

FILED
2/3/92   3:50 pm
JUDITH ALLEN, Clerk
By _____
Deputy

DR. 20-042290 PHOENIX PD

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, | NO. CR92-90323 |
| Plaintiff, | 140 GJ 373 |
| vs. | INDICTMENT |
| ANDY VINCENT ACOSTA, | POSSESSION OF NARCOTIC DRUG FOR SALE, A CLASS 2 FELONY |
| Defendant. | |

The Grand Jurors of Maricopa County, Arizona, accuse ANDY
VINCENT ACOSTA, on this 3rd day of February, 1992, charging that in
Maricopa County, Arizona:

ANDY VINCENT ACOSTA, on or about the 22nd day of January,
1992, knowingly possessed for sale Cocaine, a narcotic drug, in
violation of A.R.S. §§ 13-3408, 13-3401, 13-701, 13-702, 13-801,
13-812, and 13-3418.

_A True Bill_
("A True Bill")

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

_Lawrence Turoff_
LAWRENCE TUROFF
DEPUTY COUNTY ATTORNEY

LT:jn/OK
140 GJ 373

Date:  February 3, 1992

_Jean R. Cole_
JEAN R. COLE
FOREMAN OF THE GRAND JURY

00023

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

Lawrence Turoff
BAR ID #:  001431
Deputy County Attorney
301 West Jefferson  Suite 800
Phoenix, AZ   85003
Telephone:  602 506-7719
Attorney for Plaintiff

TH. ALLEN. CLERK
DEP.

C Lee

FILED

1992 FEB .4  PM 2: 34

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ANDY VINCENT ACOSTA,<br><br>                    Defendant. | NO. CR92- 90323<br><br>140 GJ 373<br><br>NOTICE OF SUPERVENING INDICTMENT<br><br>BOND |

An indictment having been filed this 3rd day of February, 1992, in the Superior Court of Maricopa County, Arizona, charging you, ANDY VINCENT ACOSTA, with the crime of POSSESSION OF NARCOTIC DRUG FOR SALE, A CLASS 2 FELONY, and having been admitted to bail on this charge in the sum of $7,000.00, which bond has not been posted in Complaint No. FE92-0109 in WEST PHOENIX Justice Court Precinct, Maricopa County, Arizona, you are

HEREBY NOTIFIED to appear before this court to answer the Indictment in Room 501, Central Courts Building, 201 West Jefferson, Superior Court, at Phoenix, Arizona, on Wednesday, February 12, 1992, at the hour of 8:30 a.m.

FAILURE TO APPEAR WITHOUT GOOD CAUSE WILL PLACE YOU IN CONTEMPT OF COURT, AND A WARRANT WILL BE ISSUED FOR YOUR ARREST.

140 GJ 373

GIVEN UNDER MY HAND AND SEAL of the said Court this 3rd day of
February, 1992, by order of the Court.

CLERK OF THE SUPERIOR COURT

By _MCea foss_____

Deputy Clerk

Copy of the foregoing
mailed this __4th__ day
of February, 1992, to:

✓ ANDY VINCENT ACOSTA, Defendant
✓ IN CUSTODY - 121 NORTH 12TH AVENUE, PHOENIX, AZ 85007
✓ PUBLIC DEFENDER, Defendant's Attorney
✓ Court Administrator
✓ Jail

By _MCea foss_____
Deputy Clerk

LT:jn

2

00025

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA                    )
                                    )
vs.                                 )
                                    )        NO. CR 92-90323
                                    )        PLEA AGREEMENT
ANDY VINCENT ACOSTA                 )
                                    )
_____    )
                 Defendant          )

The State of Arizona and the defendant hereby agree to the following disposition of this case:

**Plea:** The defendant agrees to plead guilty/~~no contest~~ to:

**Conspiracy To Sell Narcotic Drugs, a class 2 felony, in violation of ARS 13-3408, 3401, 701, 702, 801, 812, 3418, 1003,**

_____ committed on **Jan. 22, 1992**

This is a [ non ] dangerous, [ non ] repetitive offense under the criminal code.          (DATE)

**Terms:** On the following understandings, terms and conditions:

1. The crime carries a presumptive sentence of **7** years; a minimum sentence of **5.25** years and a maximum sentence of **14** years. Probation [ is ] [ ~~is not~~ ] available. Restitution of economic loss to the victim and waiver of extradition for probation revocation procedures are required. The maximum fine that can be imposed under A.R.S. 13-801 to 804 is **$150000** plus **40** % surcharge. There will also be a mandatory assessment of $ **100.00** pursuant to A.R.S. **13-812** _____ Special conditions regarding sentence, parole, or commutation imposed by statute (if any) are _____

2. The parties stipulate to the following additional terms: (These stipulations are subject to court approval at the time of sentencing as set forth in paragraph 7.) **Defendant shall pay a fine to the Az Drug Enforcement Account of $2800.00 which includes surcharges. Defendant shall be sentenced to the Dept. of Corrections. No other agreements.**

3. The following charges are dismissed, or if not yet filed, shall not be brought against the defendant: _____
   **Allegation of prior felony convictions**

   **Allegation of ARS 13-604.02**

STATE OF ARIZONA )
)
vs. )
)
ANDY VINCENT ACOSTA )
)
Defendant )
)
)

SUPERIOR COURT NO. CR 92-90323

J.P. COURT_____

J.P. NO._____

**4.** This agreement serves to amend the complaint or information, to charge the offense to which the defendant pleads, without the filing of any additional pleading. However, if the plea is rejected by the court or withdrawn by either party, or if the conviction is reversed upon an appeal by the defendant, the original charges and any charges that are dismissed by reason of this plea agreement are automatically reinstated.

**5.** If the defendant is charged with a felony, he hereby waives and gives up his rights to a preliminary hearing or other probable cause determination on the charges to which he pleads. The defendant agrees that this agreement shall not be binding on the State should the defendant be charged with or commit a crime between the time of this agreement and the time for sentencing in this cause; nor shall this agreement be binding on the State until the State confirms all representations made by the Defendant and his attorney, to-wit:

None

In the event the court rejects the plea, or either the State or the defendant withdraws the plea, the defendant hereby waives and gives up his right to a preliminary hearing or other probable cause determination on the original charges.

**6.** Unless this plea is rejected by the court or withdrawn by either party, the defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. Defendant further waives and gives up the right to appeal based upon any of the above.

**7.** The parties hereto fully and completely understand and agree that it is the court's duty to impose sentence upon the defendant, and that any sentence either stipulated to or recommended herein in paragraph two is not binding on the court. If after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the term and conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing, it must give both the state and the defendant an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges will automatically be reinstated. The defendant in such case waives and gives up his right to a probable cause determination on the original charges.

**8.** If the court decides to reject the plea agreement provisions regarding sentencing and neither the state nor the defendant elects to withdraw the plea agreement, then any sentence either stipulated to or recommended herein in paragraph 2 is not binding upon the court, and the court is bound only by the sentencing limits set forth in paragraph 1 and the applicable statutes.

**9.** This plea agreement in no way affects any forfeiture proceedings pursuant to A.R.S. § 13-4301 et seq., § 13-2314, or § 32-1993, if applicable, nor does the plea agreement in any way compromise or abrogate any civil actions, including actions pursuant to A.R.S. § 13-2301 et seq. or § 13-4301 et seq., or the provisions of A.R.S. § 13-2314(G) or A.R.S. § 13-4310(C).

I have read and understand the provisions of pages one and two of this agreement. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading guilty I will be waiving and giving up my right to a determination of probable cause, to a trial by jury, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my right to remain silent, my privilege against self-incrimination and presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein. I fully understand that if, as part of this plea agreement, I am granted probation by the court, the terms and conditions thereof are subject to modification at any time during the period of probation. I understand that if I violate any of the written conditions of my probation, my probation may be terminated and I can be sentenced to any term or terms stated above in paragraph one, without limitation.

I have personally and voluntarily placed my initials in each of the above boxes and signed the signature line below to indicate I read and approved all of the previous paragraphs in this agreement, both individually and as a total binding agreement.

Date 3-23-92                              Defendant _____

I have discussed this case with my client in detail and advised him of his constitutional rights and all possible defenses. I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

Date 3-24-92                              Defense Counsel _____

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

Date 3/24/92                              Prosecutor _____
                                                        Michelle Whitten

2400-224 Page 2 R1-87

00027

**IN THE S ERIOR COURT OF THE STAT  OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

STATE OF ARIZONA )
)
vs. )
)
) NO. CR 92-
ANDY VINCENT ACOSTA ) PLEA AGREEMENT
)
_____ )
Defendant )

The State of Arizona and the defendant hereby agree to the following disposition of this case:
**Plea:** The defendant agrees to plead guilty/~~no contest~~ to:

Conspiracy To Sell Narcotic Drugs, a class 2 felony, in violation
of ARS 13-3408, 3401, 701, 702, 801, 812, 3418, 1003,
_____ committed on Jan. 22, 1992
                                                            (DATE)
This is a [non] dangerous, [non] repetitive offense under the criminal code.

**Terms:** On the following understandings, terms and conditions:

1. The crime carries a presumptive sentence of 7 years; a minimum sentence of 5.25 years and a maximum sentence of 14 years. Probation [is] [is not] available. Restitution of economic loss to the victim and waiver of extradition for probation revocation procedures are required. The maximum fine that can be imposed under A.R.S. 13-801 to 804 is $150000 plus 40 % surcharge. There will also be a mandatory assessment of $ 100.00 pursuant to A.R.S. 13-812 Special conditions regarding sentence, parole, or commutation imposed by statute (if any) are_____

2. The parties stipulate to the following additional terms: (These stipulations are subject to court approval at the time of sentencing as set forth in paragraph 7.) Defendant shall pay a fine to the Az Drug
Enforcement Account of $2800.00 which includes surcharges: Defendant
shall be sentenced to the Dept. of Corrections. No other agreements.

3. The following charges are dismissed, or if not yet filed, shall not be brought against the defendant:_____
Allegation of prior felony conviction
Allegation of ARS 13-604.02

IK99-03K R1-85

STATE OF ARIZONA )
)
vs. )
) SUPERIOR COURT NO. CR 92-90323
)
ANDY VINCENT ACOSTA ) J.P. COURT_____
)
Defendant ) J.P. NO._____
)
)
_____ )

4.   This agreement serves to amend the complaint or information, to charge the offense to which the defendant pleads, without the filing of any additional pleading. However, if the plea is rejected by the court or withdrawn by either party, or if the conviction is reversed upon an appeal by the defendant, the original charges and any charges that are dismissed by reason of this plea agreement are automatically reinstated.

5.   If the defendant is charged with a felony, he hereby waives and gives up his rights to a preliminary hearing or other probable cause determination on the charges to which he pleads. The defendant agrees that this agreement shall not be binding on the State should the defendant be charged with or commit a crime between the time of this agreement and the time for sentencing in this cause; nor shall this agreement be binding on the State until the State confirms all representations made by the Defendant and his attorney, to-wit:  None

_____

_____

In the event the court rejects the plea, or either the State or the defendant withdraws the plea, the defendant hereby waives and gives up his right to a preliminary hearing or other probable cause determination on the original charges.

6.   Unless this plea is rejected by the court or withdrawn by either party, the defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. Defendant further waives and gives up the right to appeal based upon any of the above.

7.   The parties hereto fully and completely understand and agree that it is the court's duty to impose sentence upon the defendant, and that any sentence either stipulated to or recommended herein in paragraph two is not binding on the court. If after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the term or conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing, it must give both the state and the defendant an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges will automatically be reinstated. The defendant in such case waives and gives up his right to a probable cause determination on the original charges.

8.   If the court decides to reject the plea agreement provisions regarding sentencing and neither the state nor the defendant elects to withdraw the plea agreement, then any sentence either stipulated to or recommended herein in paragraph 2 is not binding upon the court, and the court is bound only by the sentencing limits set forth in paragraph 1 and the applicable statutes.

9.   This plea agreement in no way affects any forfeiture proceedings pursuant to A.R.S. § 13-4301 et seq., § 13-2314, or § 32-1993, if applicable, nor does the plea agreement in any way compromise or abrogate any civil actions, including actions pursuant to A.R.S. § 13-2301 et seq. or § 13-4301 et seq., or the provisions of A.R.S. § 13-2314(G) or A.R.S. § 13-4310(C).

I have read and understand the provisions of pages one and two of this agreement. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading guilty I will be waiving and giving up my right to a determination of probable cause, to a trial by jury, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my right to remain silent, my privilege against self-incrimination and presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein. I fully understand that if, as part of this plea agreement, I am granted probation by the court, the terms and conditions thereof are subject to modification at any time during the period of probation. I understand that if I violate any of the written conditions of my probation, my probation may be terminated and I can be sentenced to any term or terms stated above in paragraph one, without limitation.

I have personally and voluntarily placed my initials in each of the above boxes and signed the signature line below to indicate I read and approved all of the previous paragraphs in this agreement, both individually and as a total binding agreement.

Date  3-23-92                          Defendant  _Andy Acosta_

I have discussed this case with my client in detail and advised him of his constitutional rights and all possible defenses. I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

Date  3-24-92                          Defense Counsel  _Paul Jensen_

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

Date  3/24/92                          Prosecutor  _Sally Wells for_
                                                   _Michelle Winter_

00029

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

RECEIVED          PROCESSED

MAY 05 '92        MAY 06 '92

CLERK OF THE COURT

April 30, 1992            HON. MAURICE PORTLEY                    M. Garcia
                                                                  Deputy

Nº CR 92-90323

STATE OF ARIZONA                    County Attorney
                                    By: Michelle Winter
v.

ANDY VINCENT ACOSTA                 Paul Lerner, P.D.
DOB: 12/10/70
                                    Victim Witness Division


## SENTENCE OF IMPRISONMENT

9:29 a.m.  State is represented by above-named counsel.  Defendant is present with above-named counsel.

Court Reporter, Yvonne M. Hurley, is present.

Defendant moves to withdraw from the plea agreement.

Defendant's Motion to Withdraw From Plea Agreement is denied.

The Defendant is advised of the charge, the determination of guilt and is given the opportunity to speak.

Pursuant to A.R.S. § 13-607,

THE COURT FINDS AS FOLLOWS:

WAIVER OF TRIAL  The Defendant knowingly, intelligently and voluntarily waived his right to a trial with or without a jury, his right to confront and cross examine witnesses, his right to testify or remain silent and his right to present evidence and call his own witnesses after having been advised of these rights.  The determination of guilt was

Docket Number 181                    Continued                    Page 2

00030



SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

RECEIVED        PROCESSED

MAY 05 '92    MAY 06 '92

CLERK OF THE COURT

April 30, 1992

HON. MAURICE PORTLEY

M. Garcia
Deputy

№ CR 92-90323

State v. Acosta

Continued

based upon a plea of guilty.

Having found no legal cause to delay rendition of judgment and pronouncement of sentence, the Court enters the following judgment and sentence:

IT IS THE JUDGMENT of the Court that the Defendant is guilty of the following crime(s) as set forth on the following page(s), that upon due consideration of all the facts, law and circumstances relevant herein, the Court finds that suspension of sentence and a term of probation are not appropriate and that a sentence of imprisonment with the Department of Corrections is appropriate.

THE COURT FURTHER FINDS that there are circumstances sufficiently substantial to call for the term as indicated. These circumstances are stated by the Court on the record.

AS PUNISHMENT, IT IS ORDERED that the Defendant is sentenced to a term of imprisonment and is committed to the Arizona Department of Corrections as follows:

OFFENSE:  Conspiracy To Sell Narcotic Drugs

FELONY CLASS:  2

IN VIOLATION OF A.R.S.  § 13-3408, 3401, 701,702, 801, 812, 3418 and 1003

DATE OF OFFENSE:  January 22, 1992

SENTENCE:  7 years

PRESUMPTIVE

NONDANGEROUS



Office Distribution
Appeal Agency SE      X
APD                   X
MCSO                  X
AZ DOC                X
Dispo. Clerk – SE     X
Appeals - SE          X

**SUPERIOR COURT OF ARIZONA**
MARICOPA COUNTY

RECEIVED          PROCESSED

MAY 05 '92        MAY 06 '92

CLERK OF THE COURT

9

April 30, 1992          HON. MAURICE PORTLEY          M. Garcia
                                                       **Deputy**

№ CR 92-90323

State v. Acosta                                        Continued

NONREPETITIVE

This sentence is to date from April 30, 1992.

The Defendant is to be given credit for 84 days served prior to sentencing.

<u>**FINE:**</u>  IT IS ORDERED that the Defendant shall pay a fine to the  Clerk of the Superior Court of Maricopa County in the amount of $2,800.00, which equals the applicable surcharge;

Payment shall commence on the first day of the fifth month upon release from custody of the Department of Corrections.  Said payment shall not be less than $25.00 per month.

Fine is to be paid to the Arizona Drug Enforcement Fund.

Pursuant to A.R.S. § 13-812,

IT IS ORDERED that the Defendant pay an assessment in the amount of $100.00 to the Clerk of the Superior Court of Maricopa County:

Payment shall commence on the first day of the fifth month upon release from custody of the Department of Corrections.  Said payment shall not be less than $5.00 per month.

Pursuant to A.R.S. § 12-116,

IT IS ORDERED that the Defendant shall pay a fee of $8.00 to the Clerk of the Superior Court of Maricopa County.  Should Defendant pay all penalties, fines and/or sanctions in full this date, said fee is not applicable.

Docket Number 181                    Continued                    Page 22
                                                                   00032



**SUPERIOR COURT OF ARIZONA**
MARICOPA COUNTY

RECEIVED          PROCESSED

MAY 05 '92     MAY 06 '92

9                        CLERK OF THE COURT

April 30, 1992          HON. MAURICE PORTLEY          M. Garcia
                                                       Deputy

№ CR 92-90323

State v. Acosta                                        Continued

        Any order entered by the Board of Pardons and Paroles Pursuant to A.R.S. § 31-412 shall be transmitted to the Clerk of the Superior Court of Maricopa County.

        The Defendant is advised concerning rights of appeal and written notice of those rights is provided.

        IT IS ORDERED granting the Motion to Dismiss allegation of prior conviction and allegation of A.R.S. 13-604.02.

        IT IS ORDERED authorizing the Sheriff of Maricopa County to deliver the Defendant to the custody of the Arizona Department of Corrections and authorizing the Department of Corrections to carry out the term of imprisonment set forth herein. Issued: Order of Confinement.

        IT IS FURTHER ORDERED that the Clerk of the Court shall remit to the Department of Corrections a copy of this order together with all presentence reports, probation violation reports, medical and psychological reports relating to the Defendant and involving this cause.

        FILED: Notice of Right to Appeal and Presentence Report

        IT IS RECOMMMENDED to the Department of Corrections that the Defendant be screened for Shock Incarceration.

Docket Number 181          Continued          Page 200033

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

RECEIVED       PROCESSED

9    MAY 05 '92    MAY 06 '92

CLERK OF THE COURT

4-30-92 _____.   Hon. Maurice Portley   M. Garcia
_____        Judge/Commissioner/Pro Tem        Deputy

NO. CR 92-90323

STATE VS. Acosta _____        (Continued)

          Let the record reflect that the Defendant's thumbprint is permanently affixed
to this sentencing order in open court.

     9:37 a.m. _____ Hearing concludes.

(thumbprint)                         JUDGE OF THE SUPERIOR COURT

Sentence - Last Page
1601-026 Rev. 1/90

Page 24

00034

# UNITED STATES DISTRICT COURT
# **PROBATION OFFICE**
## DISTRICT OF ARIZONA

# **MEMORANDUM**

**Date:**   March 17, 2005

**From:**   Mori L. Emmons,
Sr. U.S. Probation Officer

**Re:**   **ACOSTA, Andrew**
**Docket No. 03CR00075-001-PHX-EHC**
**AFFIDAVIT**

**To:**   Charles Hyder
Assistant U.S. Attorney

On or about August 26, 2003, at the request of Assistant U.S. Attorney, Charles Hyder, I calculated the potential sentence the defendant would receive if convicted by a jury. The calculated guideline range identified Acosta as a career offender and his guideline range was 210-262 months. I provided this information to AUSA Hyder and was present in the courtroom when AUSA Hyder advised Acosta of the potential sentence. I specifically recall the defendant's reaction to the potential penalty if convicted. Also present during this exchange was FBI agent, Michael Sandborn and defense counsel, Daphane Budge.

In conformance with the provision of 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Mori L. Emmons

_____          Date: _3-17-2005_
Sr. U.S. Probation Officer

Reviewed by:

_____          Date: _3.17.05_
Laurie A. Trigilio
Supervisory U.S. Probation Officer

00035

# AFFIDAVIT

I, Michael G. Sanborn, am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since March of 1996. I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge: I am currently assigned to the Violent Crimes Fugitive Task Force, within the Phoenix Division of the FBI. I am currently assigned the bank robbery investigation, of the Bank of America, 7579 N. 16th Street, Phoenix, Arizona, in which Andrew Acosta was a suspect.

On or about August 26, 2003, your affiant, along with Assistant United States Attorney (AUSA) Charles Hyder were approached by Daphne Budge, who was representing Andrew Acosta in his bank robbery trial set to begin on August 27, 2003, before the Honorable Earl Carroll. Miss Budge inquired as to the sentencing range Mr. Acosta would be eligible for, if he was to be convicted at trial.

At the request of AUSA Hyder, your affiant immediately contacted Mori Emmons of the Federal Probation Office, District of Arizona. Miss Emmons was asked to compile the sentencing range for Mr. Acosta, based on his complete criminal history, to include the One Count, Bank Robbery Indictment, Mr. Acosta was currently charged with. After compiling this information, Miss Emmons calculated Mr. Acosta's sentencing range to be a minimum range of 210 months with a maximum range of 262 months. This information was passed to Miss Budge, who relayed it to Mr. Acosta. AUSA Hyder also spoke with Mr. Acosta, and advised him that if he accepted the plea offer, the United States Government, would not file charges of the additional bank robberies he had been identified in, as well as the possession of

00036

methamphetamine, that was found on his person while incarcerated at the Correctional Custody of America facility, (CCA).

Mr. Acosta was advised that if he accepted the plea offer, and admitted his guilt, his sentencing range would drop to a minimum of 151 months with a maximum of 188 months. To this information, Mr. Acosta said, "I can't do twelve years." No further contact was made with Mr. Acosta until his trial began on August 27, 2003.

Michael G. Sanborn

*michael G. Sanborn*

Special Agent

Federal Bureau of Investigation

# AFFIDAVIT

I hereby, certify, under penalty of perjury, that the following are true and accurate to the best of my knowledge and belief:

1)      I am an Assistant United States Attorney for the District of Arizona, and I am the prosecutor that handled the prosecution of Andrew Acosta in CR 03-75-PHX-EHC;

2)      That on or about August 26, 2003, during pre-trial motions in this matter, I was approached by Daphne Budge, Mr. Acosta's lawyer, and asked what the sentencing range would be if Mr. Acosta were to be convicted at trial;

3)      My recollection is that I either requested F.B.I. Special Agent Michael Sanborn, the case agent, to contact Ms. Morrie Emmons, United States Probation Officer, and Mr. Acosta's probation officer, to see if she could calculate the sentence he might receive based upon his criminal history, or Ms. Emmons was in the courtroom when the request was made.

4)      Ms. Emmons' calculated the defendant's criminal history and related it to Agent Sanborn and myself. I then informed Ms. Budge who relayed the information to Mr. Acosta.

5)      After some discussion with the defendant, Ms. Budge approached me and inquired what, if any, plea arrangement I would offer Mr. Acosta. Since the trial was to start the following day, I informed her that if the defendant pleaded guilty before the jury was selected I would agree to not prosecute him for two outstanding bank robberies, in which he had been identified by the tellers, and identified by his employer and by Ms. Emmons from the surveillance photographs of the robberies. I also informed her that the government would not prosecute him for possession of methamphetamine which was found on the defendant during his incarceration at Correctional Custody of America (CCA).

6)      Ms. Budge then spoke with Mr. Acosta. In a short while, she approached me again and asked if I would personally explain the offer to Mr. Acosta and answer any questions he might have. I agreed to do so, and relayed Ms. Budge's request to Mr. Acosta and he agreed that he wanted to have me explain the offer to him.

7)      I obtained the calculations from Ms. Emmons, and reviewed them with Mr. Acosta, in the presence of Ms. Budge, Agent Sanborn and Ms. Emmons. Mr. Acosta was advised that if he were convicted that he could receive a sentence of 20 years imprisonment, and that he would be classified as a Career Criminal. Though I can't remember the exact calculations at this time, I believe he was advised that if he were to plead guilty he would receive a punishment in the range of 12-18 years.

1

00038

8)      After my conversation with Mr. Acosta, Ms. Budge and Mr. Acosta continued to talk to one another, and Agent Sanborn, Ms. Emmons and I left the courtroom.  Shortly thereafter, we re-entered the courtroom and Ms. Budge inquired if I would stipulate to the low-end of the guideline range of 12 years.  I agreed to do so.  She again conferred with Mr. Acosta and informed me that he did not want to accept the plea offer.  I asked her if he understood that there would be no further offers, and she requested that I tell him that personally.  When I informed Mr. Acosta that there would be no further plea offers, and that if he were convicted he could receive 20 years, he remarked something to the effect that "I can't do 12 years."  There were no further discussions with Mr. Acosta or Ms. Budge thereafter.


Charles F. Hyder
Assistant United States Attorney

2

00039