*LAW OFFICES OF MICHAEL J. BRESNEHAN, P.C.*
Michael J. Bresnehan, Esquire
1761 E. McNair Drive, Ste. 101
Tempe, Arizona 85283-5002
(480) 345-7032
State Bar No.: 009415
mbresnehan@hotmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No: 2:03-cr-00075-GMS |
|---|---|
| | No: 2:05-cr-01319-RCC |
| Plaintiff, | |
| vs. | MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE) |
| Andrew Acosta, | |
| Defendant. | (Evidentiary Hearing Requested) |

COMES NOW the defendant, Andrew Acosta, by and through the undersigned

attorney, and hereby moves this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to

grant his motion for compassionate release, all for the reasons set forth in the

accompanying memorandum of points and authorities.


RESPECTFULLY SUBMITTED this 25th day of January, 2021, by

*MICHAEL J. BRESNEHAN, P.C.*

s/ Michael J. Bresnehan
Attorney for Defendant

# MEMORANDUM OF POINTS AND AUTHORITIES

## Relevant Facts and Procedural History

On September 4, 2003, following a jury trial in case number 2:03-cr-00075-GMS, the defendant, Andrew Acosta, was found guilty on the sole charge in the indictment, Bank Robbery and Aid and Abet, in violation of 18 U.S.C. § 2113(a) and (2).  On April 13, 2005, Acosta was sentenced to 210 months custody at the Bureau of Prisons, to be followed by a 36-month term of supervised release.

On January 11, 2008, following a jury trial in case number 2:05-cr-001319, Mr. Acosta was found guilty on both counts of the indictment, (Count 1) Bank Robbery, in violation of 18 U.S.C. § 2113(a), and (Count 2) Bank Robbery and Aid and Abet, in violation of 18 U.S.C. § 2113(a) and 2.  The incidents underlying those convictions occurred *prior* to the incident underlying the '03 case.  Consequently, the Probation Department recommended that the sentences in the '05 case run entirely concurrently with the sentence in the '03 case.  Nevertheless, on June 18, 2008, Mr. Acosta was sentenced to 96 months custody at the Bureau of Prisons on Count 1, to run consecutively with Mr. Acosta's prison sentence in case number 2:03-cr-00075-GMS, and with Count 2.  He was sentenced to 210 months custody at the Bureau of Prisons on Count 2, to run concurrently with Mr. Acosta's prison sentence in case number 2:03-cr-00075-GMS.  Both prison terms are to be followed by concurrent 36-month terms of supervised release.

Mr. Acosta is currently scheduled to be released from custody during March, 2028.

Mr. Acosta is requesting that he be released in both cases as soon as possible due to his deteriorating health, and heightened risk of serious illness from the COVID-19 virus, coupled with overwhelming evidence of his rehabilitation.

On June 23, 2020, Mr. Acosta directed a request to the BOP, in writing, for compassionate early release from custody. (See Exhibit 1, hereto) That request was denied. (See Exhibit 2, hereto)

**Statutory Framework for Sentence Reduction Authority Under 18 U.S.C. § 3582(c)(1)(A)(i)**

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in pertinent part, as follows:

(1) In any case—

(A) **the court,** upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--**

**(i) extraordinary and compelling reasons warrant such a reduction;**

**. . .**

**(ii) . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]**

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added)

Thus, the statutory requirements for sentence reduction are that the Court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable Policy Statements.

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The "compassionate release" statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the United States Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 944(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.") However, it was not until 2007, more than two decades after the statute was enacted, that the Commission responded.

It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons."  U.S.S.G. § 1B1.13, Application Notes 1(A)-(D).

Relevant to Mr. Acosta's request for compassionate release, Application Note 1(A)(ii) to Guidelines Section 1B1.13, states extraordinary and compelling reasons include the following situations:

> The defendant is—
> (I)     Suffering from a serious physical or medical condition;
> (II)    Suffering from a serious functional or cognitive impairment; or
> (III)   Experiencing deteriorating physical or mental health because of
>         the aging process,
> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

U.S.S.G. § 1B1.13, App. N. 1(A)(ii).

To the extent the government argues that the grounds for relief presented herein do not align perfectly with any of the factors set forth in § 1B1.13, it should be noted that the Policy Statement was last amended in November, 2018, before the First Step Act was passed, and still requires a motion filed by the BOP.  For that reason, a growing number of district courts have concluded the Commission lacks a policy statement applicable to post-First Step Act requests for relief.  See, e.g. *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020); *United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (citing cases); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019).  In *Cantu* the court explained:

Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582.

Similarly, in *United States v. Redd*, the Court noted that § 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants." 444 F.Supp. 3rd 717, 724 (E.D. Va. 2020). Therefore, the court concluded, "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *Id.*

More recently, the Sixth[1] and Seventh[2] Circuits have joined the Second Circuit[3] in holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for defendant-initiated compassionate release motions. All three Circuits held that 1B1.13 survives, but only for BOP-initiated motions. Thus, "extraordinary and compelling reasons" are now something for the courts to interpret. The only statutory limit is that rehabilitation *alone* is not an extraordinary and compelling reason. 28 U.S.C. § 994(t). However, rehabilitation, combined with an excessively long sentence, (as typically seen in § 3582(c)(2) motions), or with a global pandemic (as in this case), could be ECRs. "The consideration of these factors and of their possible relevance, whether in isolation or combination, is best left to the sound discretion of the trial court in the first instance." *United States v. Brooker*, 976 F.3d at 234.

_____

[1] *United States v. Michael Jones*, CA 20-3701, (6th Cir. Nov. 20, 2020).

[2] *United States v. Gunn*, CA 20-1959 (7th Cir. Nov. 20, 2020).

[3] *United States v. Brooker*, 976 F.3d 228 (2nd Cir. 2020).

Section 3582(c) provides an avenue for relief even when no health crisis looms, but simply when continued incarceration would be "greater than necessary" to achieve the ends of justice.  See *United States v. Copeland*, No. 03-cr-01120 (FB), 2020 U.S. Dist. LEXIS 87983 at *2 (E.D. N.Y. May 19, 2020) (citing *United States v. Maumau*, No. 2:08-cr-0758-TC-11, 2020 WL 806121 at *6 (D. Utah Feb. 18, 2020) (compassionate release may be justified even if "[defendant] is not suffering from any medical or age-related physical limitations").

Even assuming, *arguendo,* that § 1B1.13 *has* retained the force of law in the context of direct requests by defendants to the courts for relief under the First Step Act, Application Note 1(B) provides that "extraordinary and compelling reasons" shall include when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  Furthermore, Application Note 1(D) provides a catch-all provision, for when it is determined *"there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."*  Thus, in finding "extraordinary and compelling reasons", courts are not limited to issues of poor health and advanced age.  The statute itself does not constrain the meaning of "extraordinary and compelling", and the applicable Sentencing Guidelines Policy Statement specifically provides that in addition to health and age, "other reasons" can be considered.  See U.S.S.G. § 1B1.13, App. Note 1(D)(2)  *United States v. Smith,* No. 4:95-cr-00019-LPR-4, Doc. No. 440 (D.C. May 14, 2020).

As originally enacted, the "compassionate release" statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that, in many ways, narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at p.11, available https://oig.justice.gov/reports/2013/e1306.pdf; see, also, Dep't of Justice, Office of the Inspector General*, The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at p. 51, available at https://oig.justice.gov/reports/2015/31505.pdf#page=1 ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."); U.S.S.G. § 1B1.13, Application Note 4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).

Heeding this criticism, Congress acted. The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate

compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. See 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days have lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the gov't*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

As earlier noted, Mr. Acosta submitted a request to the BOP for early compassionate release on June 23, 2020. That request was denied. Therefore, the exhaustion requirement is effectively satisfied.

**Defendant's Situation Presents "Extraordinary and Compelling" Reasons Warranting a Reduced Sentence.**

The Centers for Disease Control ("CDC") have identified several factors that put individuals at higher risk for severe illness. "Based on currently available information and clinical expertise, **older adults and people of any age who have serious underlying medical conditions** might be at higher risk for severe illness from COVID-19." CDC, *People Who Are at Higher Risk for Severe Illness*,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Those risk factors include:

- "People 65 years and older."

- "People who live in a nursing home or long-term care facility."

- "People with chronic lung disease or moderate to severe asthma."

- "People who have serious heart conditions."

- "People with diabetes."

*Id.*

A recent study published in the Journal of the American Medical Association (JAMA) found that among 5,700 patients in New York City who were hospitalized with COVID-19, the most common underlying medical conditions were hypertension (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent).  Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area*, JAMA, available at https://jamanetwork.com/journals/jama/fullarticle/2765184.  Similarly, as the court noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March, 2020, three-fourths of individuals who die from COVID-19 in Italy had hypertension."  *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at *1 (D. Md. Apr. 3, 2020).

Mr. Acosta, who is 50 years old, has several chronic medical problems – at least one which creates a high risk for serious illness from COVID-19.  Mr. Acosta is

overweight (5'7"/214lbs). He suffers from Hepatitis C, for which he was treated unsuccessfully in 2012, edema and a degenerative knee joint condition, accompanied by chronic pain in both knees, with a recent history of surgery on both knees. He may also be suffering from carpal tunnel syndrome. These conditions are all documented in Mr. Acosta's BOP medical records. (See Exhibit 3, hereto)

The CDC has determined that obesity is a high risk factor for serious illness from COVID-19. (See Exhibit 4, hereto) The CDC has also determined that liver disease (including Hepatitis C) *may* be a high risk factor for serious illness from COVID-19. (See Exhibit 5, hereto)

As of January 4, 2021, there have been 39,050 federal inmates testing positive for the COVID-19 virus, and 180 COVID-19-related inmate deaths. At LOMPOC – USP, where Mr. Acosta resides, 210 inmates have tested positive for COVID-19. There have been three inmate deaths there related to the virus. During December, 2020, approximately 25 inmates and three staff were reported to be infected with the corona virus. That facility houses approximately 1,540 inmates. (See Exhibit 6, hereto) While the BOP has made efforts to reduce the spread of the virus throughout the federal prison system, COVID-19 has eluded those efforts, and likely will continue to do so.

Conditions of imprisonment create the ideal environment for the transmission of contagious diseases. Joseph A. Bick*, Infection Control in Jails and Prisons*, 45 CLINICAL INFECTIOUS DISEASES 1047 (2007), https://doi.org/10.1086/521910. "Incarcerated/detained persons live, work, eat, study, and recreate within congregate

environments, heightening the potential for COVID-19 to spread once introduced." Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 24, 2020), https://www.cdc.gov/ coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.  The CDC recognizes the difficulty of preventing the introduction of COVID-19 into prison facilities:

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members.  Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.

*Id.*

Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jails and prisons.  Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.  Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates is contraband in jails and prisons because of its alcohol content.  Keri Blakinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband?*, ABA JOURNAL (Mar. 13, 2020), https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

Because of these dangers, the public health community is insistent on the critical need to rapidly reduce our prison populations, both for the health of our inmates and the health of the community as a whole:

> It is . . . an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible . . . Releasing as many inmates as possible is important to protect the health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole.

Beyrer Declaration, ¶¶ 17, 19. "We need to take the unprecedented step TODAY of providing urgent release to everyone in the jails who is at risk of serious morbidity and mortality from COVID." Jennifer Gonnerman, *A Rikers Island Doctor Speaks Out to Save Her Elderly Patients from the Coronavirus*, THE NEW YORKER (Mar. 20, 2020) (quoting Rachael Bedard, Rikers Island Geriatrician), https://www.newyorker.com/news/news-desk/a-rikers-island-doctor-speaks-out-to-save-her-elderly-patients-from-the-coronavirus.

Similarly, on March 23, 2020, a bipartisan group of fourteen senators wrote to Attorney General Barr and the Director of the Bureau of Prisons to express "serious concern for the health and wellbeing" of those inmates "most vulnerable to infection." *Letter from Senator Charles Grassley et al.* (Mar. 23, 2020). They noted that "[c]onditions of confinement do not afford individuals the opportunity to take proactive steps to protect themselves, and prisons often create the ideal environment for the transmission of contagious disease." *Id.* The senators called on the BOP to use existing tools like the elderly prisoner home confinement program and compassionate release to discharge vulnerable inmates from prison. *Id.*

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in sentence under the compassionate release statute.  A non-exhaustive list includes:

## **Obesity**

*United States v. White*, No. 2: 13-cr-20653-MFL-MAR-l, 2020 WL 2557077 (E.D. Mich. May 20, 2020); *United States v. Sarkisyan*, No. 3: l 5-cr-00234-CRB-15, 2020 WL 2542032 (N.D. Cal. May 19, 2020); *United States v. Anderson*, No. 3:15-cr-30015-SEM-TSH-1, 2020 WL 2521513 (C.D. Ill. May 18, 2020); *United States v. Johnson*,  No. 15-CR-125 (KBJ), 2020 WL 2515856 (D.D.C. May 16, 2020); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095 (E.D. Mich. May 15, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107 (C.D. Ill. May 15, 2020); *United States v. Young*, No. CR 4:16-40036-TSH, 2020 WL 2514673 (D. Mass. May 15, 2020); *United States v. Handy*, No. 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020); *United States v. Cassidy*, No, 1:17-cr-00116-WMS-MJR, 2020 WL 2465078 (W.D.N.Y. May 13, 2020); *United States v. Barber*, No. 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Hunt*, No. 2:18-cr-20037- DPH-DRG, 2020 WL 2395222 (E.D. Mich. May 12, 2020); *United States v. Ullings*, No. l:10-cr-00406-MLB-1, 2020 WL 2394096 (N.D. Ga. May 12, 2020); *United States v. Foreman*, No. 3:19-cr-00062-VAB-l, 2020 WL 2315908 (D. Conn. May 11, 2020); *United States v. Jenkins*, No. 99-cr-00439-JLK-1, 2020 WL 2466911 (D. Co. May 8, 2020); *United States v. Quintero*, No. 6:08-cr-06007-DGL-l, 2020 WL 2175171 (W.D. N.Y. May 6, 2020); *United States v. Howard*, No. 4:15-cr-00018-BR-2, 2020 WL 2200855 (E.D. N.C. May 6, 2020); *United States v. Lacy*, No. 3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1, 2020); *United States v. Ardila*, No. 3:03-cr- 00264-SRU-1, 2020 WL 2097736 (D. Conn. May 1, 2020); *United States v. Delgado*, No. 3:18-cr-00017-VAB, 2020 WL 2464685 (D. Conn. Apr. 30, 2020); *United States  v. Dillard*, No. l:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020); *United States v. Joling*, No.6:15-cr-00113-AA-l, 2020 WL 1903280 (D. Or. Apr. 17, 2020); *United States v. Trent*, No. 3:16-cr-00178-CRB-1, 2020 WL 1812242 (N.D. Cal. Apr. 9, 2020); *United States v. Gross,* No. l:15-cr-00769-AJN-3, 2020 WL 1673244 (S.D. N.Y. Apr. 6, 2020); *United States v. Zukerman*, No. l:16-cr-00194-AT-l, 2020 WL 1659880 (S.D. N.Y. Apr. 3, 2020)

## **Hepatitis C**

*United States v. Copeland*, No. l:03-cr-01120-FB-l, 2020 WL 2537250 (E.D. N.Y. May 19, 2020); *United States v. Cotinola*, No. l:13-cr-03890-MV-I, 2020 WL 2526717 (D. N.M. May 18, 2020); *United States v. McGraw*, 2:02-cr-00018-LJM-CMM, 2019 WL 2059488 (S.D. Ind. May 9, 2019); *United States v. Etzel*, No. 6:17-CR-00001-AA, 2020 WL 2096423 (D. Or. May 1, 2020); *United States v. Hammond*, No. l:02-cr-00294-BAH-1, 2020 WL 1891980 (D. D.C. Apr. 16, 2020); *United States v. Miller*, No. 2:16-cr-20222-AJT-RSW-l, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020); *United States v. Gray*, 416 F. Supp. 3d 784, 786 (S.D. Ind. Sept. 20, 2019) (granting compassionate release to a defendant with "'chronic debilitating medical conditions" including type II diabetes, hypertension, hyperlipidemia, chronic constipation, and Hepatitis C)

## **No Underlying Conditions**

*United States v. Kelly*, 13-CR-59-CWR-LRA, (DE 145: 1 & 13) (S.D. Miss. May 1, 2020) (granting compassionate release to an individual in his late 20s without health issues where BOP failed to control the outbreak of COVID-19 at his facility); *United States v. Chestnut*, 09-CR-06071-DGL-MWP, (DE 925) (W.D.N.Y. Apr. 29, 2020) (granting compassionate release request despite the fact that Mr. Chestnut was not vulnerable based on a compromised immune system or pre-existing medical condition, (see DE 922: 10)); *United States v. Vazquez*, 18-CR-20530-Ungaro, (DE 294: 1, n.1) (S.D. Fla. Apr. 13, 2020) (recommending to BOP that the defendant serve his remaining sentence on home confinement where the defendant was in his late 30s and did not claim to suffer from any health that increased his risk of illness from COVID-19); see also *United States v. Barkman*, 19-CR-00052-RCJ-WGC, 2020 WL 1811343 (D. Nev. Mar. 17, 2020) (suspending the defendant's intermittent confinement, because of the risks of being incarcerated during the pandemic even though the defendant did not allege that he fell within any particularly vulnerable age or health class, (see DE 20)); *United States v. Barkman*, 19-CR-00052-RCJ-WGC, Doc. No. 27 (D. Nev. Apr. 17, 2020) (further extending the suspension of the defendant's intermittent confinement in light of ongoing nature of pandemic).

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes "extraordinary and compelling reasons" for

release. This pandemic, as applied to Mr. Acosta is an extraordinary and compelling circumstance.

Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[4] Mr. Acosta is exactly the type of individual deserving of compassionate release. He is at risk of severe illness. He suffers from a number of other physical infirmities that make self care increasingly difficult. Moreover, his release does not pose a danger to the community.

Mr. Acosta has put his time in custody to good use, completing a plethora of academic and self-improvement classes, and working a variety of jobs. Mr. Acosta has spent virtually every day of his terms of incarceration preparing for his eventual release. He is about to complete three separate college programs: 1) Liberal Arts; 2) Social Sciences; and 3) Psychology. Additionally, he has a Business/Computer Certification from Chemeketa Community College in Oregon. He also completed two apprenticeships as a Transactional/Resource Clerk, and as a Teacher's Aid,

_____

[4] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.* The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/02/Public-Health-Expert-Letter-to-Trump.pdf.*

respectively, logging a combined 7,000 or so hours of training. Both programs are certified by the Oregon Department of Labor. (See Exhibit 7, hereto)

Along with the college coursework and other programs he has completed while incarcerated, Mr. Acosta has been certified as a facilitator by the Alternatives to Violence Project. (See Exhibit 8, hereto) He currently facilitates and teaches other inmates non-violent conflict resolution methods.

Mr. Acosta has mentored in many of the classes he has taken, and has spent a large portion of his time while in custody tutoring and mentoring other inmates through the prison Education Department. He has no recent prison disciplinary write-ups. (See Exhibit 9, hereto)

Thus, Mr. Acosta has shown an extraordinary level of rehabilitation while in custody. See *United States v. Wade*, No. 2:99-cr-00257-CAS-3, 2020 U.S. Dist, LEXIS 65373 (C.D. Cal. April 13, 2020) (where district court gave great weight to movant's in-custody rehabilitation). Clearly, Mr. Acosta no longer poses a threat to the community.

Here, Mr. Acosta's compromised physical health and the real dangers he faces of contracting COVID-19 and becoming severely ill, coupled with his extraordinary rehabilitation, clearly warrant relief.

### The Relevant § 3553(a) Sentencing Factors Warrant Reducing Defendant's Sentence to Time Served

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must

consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a

sentencing reduction or modification is warranted.  18 U.S.C. § 3582(c)(1)(A)(i).

     While Mr. Acosta was found guilty of serious offenses in this case, the

underlying conduct is 18 years old.  A review of the PSRs in both cases, reveals that

no weapons were used in the robberies, and no one was injured.  He is scheduled to

finish the custody portion of his federal prison sentences in March, 2028. (See Exhibit

10, hereto)  Thus, he has already served a majority of his aggregate prison terms –

terms deemed appropriate by this Court at the time of his sentencings.  A review of the

PSR in both the '03 and '05 cases reveals that Mr. Acosta was sentenced, in both

cases,  pursuant to U.S.S.G. § 4B1.1 (career offender) based, in part, on his 1999

conviction in CR98-00894-PHX-RGS for "extortion" under U.S.C. § 2113(a).

Arguably, that conviction is not categorically a "crime of violence" for § 4B1.1

purposes.  See, e.g., *United States v. Zembek*, 634 F.2d 1159, 1174 (9th Cir. 1980)

(Hobbs Act extortion not a "crime of violence" because "fear" under the extortion

definition way include fear of financial or economic harm, and need not entail physical

force).  This is so irrespective of the facts in the case.  *United States v. Dominguez-*

*Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014) (the categorical approach requires

courts to "look to the elements of the offense rather than the particular facts underlying

the defendant's own [case].").  The other conviction supporting Mr. Acosta's "career

offender" status was a violation of Arizona Revised Statutes § 13-3408(A)(2) which is

*not* categorically a "drug trafficking offense," as it is broader than its federal analogue,

and is indivisible.  Indeed, this Court made that very determination in *Acosta v. United*

*States*, CV17-00765-PHX-RCC (D.Ariz. June 11, 2019). See, also, U*nited States v. Sanchez Fernandez*, No. 15-10291, 2016 WL 5404056 at *1 (9th Cir. Sept. 28, 2016)669 F. App'x 415 (9th Cir. 2016) (A.R.S. § 3408(A)(2) is categorically broader than its federal analogue and is indivisible). See, also, *United States v. Townsend*, 897 F.3d 66 (2nd Cir. 2018). ("Controlled substance" under U.S.S.G. § 4B1.2(b) refers to drugs under federal law – that is the CSA). Mr. Acosta was recently granted a certificate of appealability by the Ninth Circuit in CV17-00765-PHX-RCC on that issue, and is currently litigating it in CA 19-16254.

The career offender status moved Mr. Acosta's Guidelines prison sentencing range from 70-87 months up to 210-240 months in the '03 case, and from 100-125 months up to 210-262 in the '05 case.

This Court may consider whether, in hindsight, the original prison sentence was excessive as part of its § 3553(a) analysis under § 3582(c). See, e.g., *United States v. Joseph*, No. 00-cr-20217 CW, 2020 U.S. Dist. LEXIS 102993 (N.D. Cal. June 8, 2020) where court gave weight to the fact that under current law, defendant's sentence would have been shorter); *United States v. McCoy*, No. 20-6821 (4th Cir. Dec. 2, 2020) (same); *United States v. Smith*, No. 14-cr-189 TSC, 2020 Dist. LEXIS 86008 (D.C. May 14, 2020) (same); *United States v. Wade*, *supra,* (same). Moreover, as earlier noted, being incarcerated during the COVID-19 outbreak has "sufficiently increased the severity of the sentence beyond what was originally anticipated." *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Maryland April 28, 2020); *United States v. McGraw*, No. 2:02-cr-018, 2019 WL 2059488 at *5 (S.D. Ind.

May 9, 2019).  So too has Mr. Acosta's daily fear of becoming seriously ill, or even dying, from the COVID-19 virus.

Because of his deteriorating medical condition, Mr. Acosta suffers daily from chronic pain and disability.  A reduction of Acosta's sentence "would enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the very real threat that COVID-19 poses in the institutional environment." *United States v. Andre Williams*, No. 3:04-cr-95/MCR, 2020 U.S. Dist. LEXIS 63824 at *3 (N.D. Fl. April 1, 2020).

Upon his release, Mr. Acosta will reside with his future employer, Sergio Raya. Mr. Raya is a long-standing friend of Mr. Acosta's family.  He owns and operates his own business, Action Material Handling in Phoenix, Arizona. (Sergio.raya@actionmh.com).  He will also have financial support from a long-time friend, Angie Moreno, whose contact information will be made available upon request. (See Exhibit 11, hereto)

Given Mr. Acosta's extraordinary pro-social accomplishments while in custody, his continued incarceration is no longer necessary to protect the community.  He is 50 years old, and in fragile health.  Upon release, he will be on federal supervised release for three years.

## CONCLUSION

Mr. Acosta has exhausted his administrative remedies.  He has demonstrated "extraordinary and compelling reasons", including COVID-19 co-morbidity factors and deteriorating health, and extraordinary rehabilitation.  In retrospect, his aggregate

sentences were much longer than they would be under current law.  A reduction of his

aggregate sentences to time-served would be consistent with applicable Policy

Statements issued by the Sentencing Commissions, and consistent with the goals of 18

U.S.C. § 3553(a), to the extent they are relevant.

For these reasons, Mr. Acosta respectfully requests a sentencing reduction to

time-served.

RESPECTFULLY SUBMITTED this 25th day of January, 2021, by

**MICHAEL J. BRESNEHAN, P.C.**

s/  Michael J. Bresnehan
Attorney for Defendant

**CERTIFICATE OF SERVICE**

X  I hereby certify that on January 25, 2021, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Hon. G. Murray Snow
United States District Judge

Karla Hotis Delord, Esq.
Asst. U.S. Attorney

X  I hereby certify that on January 25, 2021, I served the attached document by Mail on the following, who is not a registered participant of the ECF System:

Andrew Acosta
Defendant

s/  Michael J. Bresnehan